United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 05, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 25-37093 |
| 84 ENERGY LLC, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |
| ANDREW KOLLAER, MPC 84 I, LLC, and KOLCAP, LLC, | § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 25-3836 |
| | § | |
| 84 ENERGY, LLC, 84 ENERGY HOLDINGS, LLC, and AARON SHIMEK, | § § | |
| | § | |
| Defendants. | § | |

**TEMPORARY RESTRAINING ORDER**
*Concerning ECF No. 2.*

This matter came before the Court on Andrew Kollaer, MPC 84 I, LLC ("*MPC*") and Kolcap, LLC's ("*Kolcap*") ("*Plaintiffs*") **"Opposed Motion For Emergency Hearing On Plaintiffs' Request For A Temporary Restraining Order"**[1] (the "*Application*"). The Court held a hearing on this matter beginning on December 1, 2025 and concluding on December 4, 2025 (the "*Hearing*"). After examining the verified pleadings, evidence presented and arguments by the parties, and holding the Hearing with notice to 84 Energy, LLC (the "*Debtor*"), the Court issues the instant Order.

## I. JURISDICTION, VENUE, & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the

---

[1] ECF No. 2.

latter court will appropriately preside over the matter.[2]  This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), this Adversary Proceeding contains core matters, as it primarily involves matters concerning administration of the estate.[3]

Furthermore, this Court may only hear a case in which venue is proper.[4]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's main bankruptcy case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[5]  However, *Stern* concerned final orders entered by the bankruptcy court and here, the Court need only enter an interlocutory order because a temporary restraining order will not "end the litigation on the merits and leave nothing to do but execute the judgment."[6]  Entering an interlocutory order does not implicate "the constitutional limitations on the Court's authority to enter final judgments."[7]  Accordingly, because the nature of this order is interlocutory, it can be entered without a determination of the Court's constitutional authority to enter a final judgment.

## II.   ANALYSIS

---

[2] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[3] *See* 28 U.S.C. §§ 157(b)(2)(A), (O).
[4] 28 U.S.C. § 1408.
[5] *Stern v. Marshall*, 564 U.S. 462, 503 (2011).
[6] *In re Lieb*, 915 F.2d 180, 184 (5th Cir. 1990).
[7] *West v. WRG Energy Partners LLC* (*In re Noram Res., Inc.*), 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011).

Under federal law, temporary restraining orders are intended to preserve the status quo and prevent irreparable harm only until a hearing on further relief can be held.[8] A temporary restraining order granted pursuant to 11 U.S.C. § 105 must be tested against the standards of Federal Rule of Civil Procedure 65, applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7065.[9] While courts exercise discretion in granting or denying a temporary restraining order,[10] the movant must meet a four-prong test: (1) there is a likelihood the moving party will succeed on the merits; (2) the party is likely to suffer irreparable harm (harm for which there is no adequate remedy at law); (3) the threatened injury to the movant outweighs the harm that the injunction may cause to the non-movant; and (4) the public interest would not be adversely affected by the injunction.[11]

### 1. Plaintiffs failed to show a substantial likelihood of success on the merits

A movant bears the burden of showing that it has a substantial likelihood of success on the merits.[12] If a movant fails to make that showing, "the injunction should be denied and there is no need for the court to address the other requirements for a preliminary injunction."[13] The basis of Plaintiffs' requested temporary restraining order is to prevent termination of oil and gas leases on the over 1,000 oil and gas wells owned by 84 Resources Holdings, LLC ("*RH*") and 84 Energy Resources I, LLC, ("*ER*") where Debtor is the current operator of record and that are subject to 60-day, 90-day, or 120-day cessation of production clauses (the "*Wells*").[14] Here, the relevant underlying claim is Plaintiffs' request for declaratory relief that Debtor was removed as operator of all Wells owned by RH and ER.[15] Plaintiffs are members and managers of RH and ER.[16]

---

[8] *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).
[9] *Villareal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*, 554 B.R. 415, 424 (Bankr. S.D. Tex. 2016).
[10] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[11] *Daniels Health Scis, LLC v. Vascular Health Scis.*, 710 F.3d 579, 582–85 (5th Cir. 2013).
[12] *Butts v. Aultman*, 953 F.3d 353, 361 (5th Cir. 2020) (citing *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)).
[13] *Butts*, 953 F.3d at 361 (citing *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003)).
[14] ECF No. 2 at 2–3.
[15] ECF No. 1-2 at 4.
[16] ECF Nos. 7-1 at 52, 53; 7-2 at 27; 7-3 at 2, 39.

As to the ER-owned wells, ER, RH, and 84 Resources Management, LLC ("*Resources Management*"), through its agents, sent a letter to Aaron Shimek as sole member and manager of Debtor notifying him that Debtor has been removed as manager of ER "for cause" by written notice dated October 20, 2025 pursuant to Section 5.11 of the ER Company Agreement.[17] The ER Company Agreement provides that a manager can be removed for cause which is defined as including, *inter alia*, a "repeated failure to perform substantially his duties as a Manager . . . which failure, whether committed willfully or negligently, has continued unremedied for more than *thirty (30) days after the Company has provided written notice* thereof."[18]

Under Section 5.14 of the ER Company Agreement, Debtor's removal as manager results in automatic removal of Debtor as operator of the ER-owned wells.[19] Although communications between Plaintiffs and Debtor reflect Plaintiffs' dissatisfaction with the Debtor's operations, the Plaintiffs have not shown they issued a written notice specifically detailing actions that constitute a "repeated failure to perform substantially [Debtor's] duties as a Manager" at least 30 days before the October 20, 2025 notice.[20] Nor have Plaintiffs demonstrated a strong likelihood that any of the other "cause" events enumerated in the ER Company Agreement have occurred.[21] Thus, Plaintiffs have not demonstrated a strong likelihood that cause existed to remove the Debtor as manager.

As to the RH-owned wells, no written operating agreement exists fixing Debtor's term as operator, making its operatorship terminable at a reasonable time.[22] Therefore, contrary to

---

[17] ECF Nos. 7-3 at 19; 7-6.
[18] ECF No. 7-3 at 6 (emphasis added).
[19] ECF No. 7-3 at 20.
[20] ECF Nos. 7-3 at 6. *See e.g.*, ECF No. 7-4.
[21] *See* ECF No. 7-3 at 6 (defining "cause").
[22] Dec. 1, 2025 Courtroom Hearing (Andrew Kollaer testifying). *Anderson Energy Corp. v. Dominion Okla. Tex. Expl. & Prod.*, 469 S.W.3d 280, 293 (Tex. App. 2015) ("HighMount does not cite any case from Texas or any other state in which an oil and gas operating agreement without a specified duration was held to be 'terminable at will,' and we have found none. . . . Based on the nature of a joint operating agreement, and particularly the nature of AMI and PRP provisions as real property covenants running with the land, we conclude that a reasonable term should be implied into the JOA.").

Plaintiffs' position, the Debtor could not be removed as operator of the RH-owned wells at will. Based on a careful review of the evidence, the Court finds that Plaintiffs failed to show they removed Debtor as operator at a reasonable time.

The Court thus finds that the Plaintiffs failed to demonstrate a substantial likelihood of success on the merits in proving their claim for declaratory relief that the October 20, 2025 removal notice effectively removed Debtor as the operator of all Wells owned by ER and RH.

**2. Plaintiffs are likely to suffer irreparable harm**

Even though Plaintiffs failed to demonstrate a substantial likelihood of success on the merits, Plaintiffs have demonstrated that they are likely to suffer irreparable harm. A harm is irreparable where there is no adequate remedy at law.[23] A movant cannot carry its burden by showing speculative injury; more than an unfounded fear of injury must exist.[24] Plaintiffs are likely to suffer irreparable harm because Debtor has shut in all existing Wells, which Plaintiffs have shown could prevent ER and RH from utilizing up to $25 million in oil-and-gas assets and could result in the loss of several leases.[25] Several leases contain 60-day cessation clauses that began running on October 20, 2025 and may terminate as early as December 7, 2025 if such Wells are not re-entered; termination of these leases would permanently extinguish Plaintiffs' operating rights and cannot be remedied by monetary damages, especially given Debtor's insolvency.[26]

Thus, the Court finds that Plaintiffs are likely to suffer irreparable harm if the temporary restraining order is not granted.

**3. The public interest would be benefited by the temporary restraining order**

The record reflects that certain shut-in Wells have experienced leaks resulting in environmental impacts, and the absence of an active operator to supervise and maintain the field

---

[23] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).
[24] *Id.*
[25] Dec. 1, 2025 Courtroom Hearing (Andrew Kollaer testifying); ECF No. 7-4; Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).
[26] *See e.g,* ECF Nos. 7-10; 7-7; Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).

indicates that such conditions are likely to continue; issuing the temporary restraining order will allow the operator to assume control of the site and begin remediation efforts.[27] Therefore, the public interest would be benefited from the issuance of the temporary restraining order.

### 4. The threatened injury to Plaintiffs outweighs the harm that the temporary restraining order may cause to Debtor

The evidence shows that Debtor lacks adequate funds to operate, all Wells have already been shut-in, and that Debtor will not be harmed by having the operations resume.[28] Thus, the Court finds that granting the temporary restraining order will not cause any significant harm to Debtor.

For the reasons stated herein, the Court finds that sufficient evidence has been provided at the Hearing demonstrating that all Wells have been shut in and that if they are not re-entered by at least December 7, 2025, at least some of the oil and gas leases will terminate and cause loss of investments that cannot be remedied through monetary damages. Although the first factor, likelihood of success on the merits, has not been satisfied, the evidence establishes that Plaintiffs will suffer irreparable harm if operations do not resume. Accordingly, a temporary restraining order will be issued to the extent necessary to ensure that operations resume promptly, the status quo is maintained, and that the oil and gas leases are preserved.

However, Plaintiffs' request to maintain the "status quo" is misplaced. Plaintiffs, in their attempt to maintain the status quo, request this Court to order Debtor, through Aaron Shimek, its principal, to turn over operatorship of all oil and gas leases to a third party, HD Operating, LLC.[29] Yet, it is undisputed that Debtor is the current named operator of the Wells with the Texas Railroad Commission.[30] Moreover, Shimek provided testimony showing that he would not be able to

---

[27] ECF No. 7-8; Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).
[28] Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).
[29] ECF Nos. 2; 4.
[30] Dec. 1, 2025 Courtroom Hearing (Andrew Kollaer testifying); ECF No. 7-4; Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).

transfer operations to HD Operating, LLC in the time period required to prevent termination of the oil and gas leases due to regulatory, accounting and bonding requirements needed for such transfer.[31] Nor have Plaintiffs demonstrated that HD Operating, LLC is capable of resuming operations within the time required to rescue the oil and gas leases. Moreover, Shimek testified that he is willing to resume operations but that he was forced to shut in the Wells due to Plaintiffs refusing to fund operations.[32]

Thus, given the immediate need to resume well operations and Debtor's willingness to do so, it is therefore:

**ORDERED**: that

1. Andrew Kollaer, MPC 84 I, LLC, and Kolcap, LLC's "Opposed Motion For Emergency Hearing On Plaintiffs' Request For A Temporary Restraining Order"[33] is GRANTED in part and DENIED in part.

2. By **5:00 p.m. on December 5, 2025**, Plaintiffs must post a **bond or cash in lieu of bond** in the amount of **$100,000.00** with the Clerk of Court.

3. By **5:00 p.m. on December 6, 2025,** Debtor must re-engage all Wells and file a certificate of compliance with the Clerk of Court. Plaintiffs must reimburse Debtor's expenses related to this operation. Debtor may issue draw requests for anticipated expenses and funds needed to re-engage all Wells, and Plaintiffs must pay those requests.

4. By **December 8, 2025**, Debtor must authorize Blakely & Weeks-Thome, PLLC to provide Plaintiffs with access to requested books and records and grant viewing access only to the Wolfpack accounting software.

5. No later than **December 10, 2025**, Debtor must notify all payors of production proceeds for the Wells and take all steps reasonably necessary to ensure that such payors remit production proceeds to the IOLTA account of Debtor's counsel pending further order of this Court. All production proceeds received must be deposited into Debtor's counsel's IOLTA account and preserved pending further order of the Court.

6. By **December 11, 2025**, Debtor must Deliver to Plaintiffs, in their current form, all records and data listed on **Exhibit A** to this Order in the Debtor's possession and/or subject to its control and provide such additional records or access to information in the Debtor's possession or subject to its control reasonably necessary to continue operations of the Wells as may be requested by Plaintiffs in writing no later than 5 business days after request. All requested information must be produced in a manner that clearly separates the Wells-related

---

[31] ECF No. 7-4; Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).
[32] Dec. 4, 2025 Courtroom Hearing (Aaron Shimek testifying).
[33] ECF No. 2.

    records from any data or records relating to the Legacy Assets, and must not be comingled with Legacy Asset information.

7. Debtor must immediately address any environmental concerns, including oil spills, and must provide Plaintiffs with a remediation plan no later than **December 11, 2025**. Debtor and Plaintiffs must meet and confer to develop the remediation plan, and if no agreement is reached, the parties must file a motion with this Court to resolve any disputes by **December 11, 2025**.

8. By **December 12, 2025**, Debtor must file a notice with the Clerk of Court identifying all outstanding fees and unreimbursed expenses associated with this case. Plaintiffs must reimburse such amounts by **December 19, 2025**, or file any objection by that date.

9. By **12:00 p.m. on December 18, 2025**, Debtor must identify and provide Plaintiff with a list of wells with 60-day and 90-day cessation of production clauses.

10. Debtor is prohibited from shutting in any further wells without the express consent of Plaintiff or further order of this Court.

11. Debtor is prohibited from damaging, destroying, tampering with, transferring or moving (except as required in the Court's order), hiding or secreting any property or records (including paper or tangible documents or files and electronic files), any text messages, computer files, or other paper or electronic documents that relate to the Wells or operations thereunder

12. Debtor and Plaintiffs must meet and confer and agree on any new hires and must sign a written acknowledgment of any such agreement. If the parties cannot agree on new hires, they must file a motion with the Court to resolve the dispute.

13. This Temporary Restraining Order shall expire upon the issuance or denial of a temporary injunction.

    **IT IS FURTHER ORDERED:** that

14. On **Thursday, December 18, 2025**, at **8:30 a.m. (Central Standard Time)**, the Court will conduct an electronic evidentiary hearing before the United States Bankruptcy Court, Houston Division. For persons wishing to appear in person, the hearing will be conducted from the United States Courthouse, 1701 W. Business Hwy 83, 10th Floor Courtroom, McAllen, TX 78501. The purpose of the hearing shall be to determine whether this Temporary Restraining Order should be made a Preliminary Injunction.

15. Pursuant to Bankruptcy General Order 2021-05 and Bankruptcy Local Rule 9017-1, parties may either appear electronically or in person unless otherwise ordered by this Court.

16. To participate electronically, parties must follow the instructions set forth on Judge Rodriguez's web page located at: https://www.txs.uscourts.gov/content/united-states-bankruptcy-judge-eduardo-v-rodriguez. Parties are additionally instructed to: (i) call in utilizing the dial-in-number for hearings before Judge Rodriguez at **832-917-1510,** conference room number 999276 **and** (ii) log on to GoToMeeting for video appearances and witness testimony, utilizing conference code: judgerodriguez. **Parties MUST HAVE TWO SEPARATE DEVICES to appear by video and telephonically. One device will be used to log on to GoToMeeting and the other will be used to call the telephonic conference line.**

17. Parties must comply with Bankruptcy Local Rule 9013-2 and Judge Rodriguez's Court Procedures Section VII(b) regarding the exchange and submission of electronic exhibits.

18. For any witness and exhibits, parties must utilize Form 1-100 Witness & Exhibit List which can be located on this Court's home page at https://www.txs.uscourts.gov/content/chief-united-states-bankruptcy-judgeeduardo-v-rodriguez

19. Within two business days of entry of this Order, Plaintiffs must serve a copy of this Order on all parties entitled to notice of the hearing and file a certificate of service with the Clerk's office.

**SIGNED December 5, 2025**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

**EXHIBIT A**

1. Royalty Owners: Updated Division Orders, including names, addresses and federal ID #s (SS, EIN)
2. All financial information necessary to account for well costs to date (including any AFE to actual cost comparisons)
3. Oil and gas purchasers and contact information
4. Vendor information
   a. Updated listing- including Name and Addresses, Federal ID #'s
   b. Service Contracts - MSAs,
   c. Current insurance information for vendors
   d. Current outstanding balances owed by vendor and date
   e. Post-Petition Outstanding Balances
   f. Aged listing of all outstanding balances
   g. Electrical suppliers (name, address, list of all meters)
   h. Agreements made for any current or future work with any vendor, service company or supplier.
5. Information on all field staff personnel
6. Gain access to field office and facilities and files
7. Access to well sites
8. Information for all landowners including land records
   a. Copies of all leases
   b. Contact details and relationship information
   c. Ongoing negotiations - explanation and status
   d. Title Attorney(s) information and status
9. Clear description and understanding of what is done on a daily basis by:
   a. Pumpers
      i. gauging, reporting
      ii. well checks
      iii. maintenance
         1. Well treatment programs (schedule, volumes, by whom)
         2. Well integrity and monitoring programs (pressures, testing, etc)
   b. Other field staff
   c. Office staff
      1. Reporting (what, to who, why, when)
         1. Texas Railroad Commission reports made and required

The following general information as well as wellbore and geological information:

General:
- Inventory of facilities and equipment
- HSSE Information of any spills or other incidents that have taken place, any concerns, etc
- Location plats of wells, locations, facilities, pipelines, metering, valving, water supply ponds, water supply sources, etc.
- Mapping of right of ways and associated records
- Inventory of any stock on hand (oil and tank balance)
- Inventory of and access to all seismic data and interpretations
- All Well files

- Any other geologic, geophysical or petrophysical consulting analyses or reports; Well Data For Each Well:
-  Files and History of
    - All well work activity
    - Drilling and Completion
    - Stimulation o Flowback
    - Artificial lift
    - Well intervention (repairs, changes, etc.)
- Well bore Diagrams
- Actual pumped reports for each stimulation (3rd party reports)
- Open Hole logs
- Cased Hole logs
- Mud Logs
- List of all necessary regulatory filings & required timing